ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I (DJ 2025-063A)

| DAVID QUIÑONES ROMÁN, Apelada, v. ALEJANDRO FIGUEROA VÉLEZ, Apelante. | TA2026AP00414 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla. Civil núm.: IS2024CV00281. Sobre: cobro de dinero. |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 4 de junio de 2026.

La parte apelante, señor Alejandro Figueroa Vélez (señor Figueroa), presentó su recurso el 24 de abril de 2026[1]. Impugna la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, mediante la cual declaró con lugar la demanda en cobro de dinero instada en su contra y, a su vez, declaró sin lugar la reconvención que instara contra la parte apelada, el señor David Quiñones Román (señor Quiñones). En virtud de ello, nos corresponde determinar si, conforme a la prueba desfilada en el juicio, procedía que se dictara sentencia a favor del apelado y en contra del apelante.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

I

El 21 de noviembre de 2024, el señor David Quiñones Román (señor Quiñones) presentó contra el señor Figueroa una demanda sobre cobro de dinero al amparo de la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V[2].

---

[1] Junto a su recurso, la parte apelante presentó la transcripción de la prueba oral (TPO), la cual se tiene por estipulada con la parte apelada.

[2] *Véase*, apéndice del recurso, entrada 1 del *Sistema Unificado para el Manejo y Administración de Casos* del Tribunal de Primera Instancia (SUMAC TPI). La parte apelante adjuntó a su demanda tres documentos: un contrato de construcción fechado el

En síntesis, alegó que el señor Figueroa le adeudaba la suma de $4,169.25, por concepto de trabajos de construcción realizados, y los daños presuntamente sufridos por uno de sus empleados que no formó parte del pleito.

Posteriormente, el señor Figueroa presentó su contestación a la demanda junto con una reconvención[3]. El señor Figueroa negó todas las alegaciones en su contra e invocó varias defensas afirmativas. En cuanto a la reconvención, alegó que el señor Quiñones había incumplido el contrato verbal suscrito. En particular, al no contar con todos los permisos gubernamentales necesarios para llevar a cabo la obra y negarse a arreglar presuntos vicios en la construcción.

Tras varios tramites procesales, entre los cuales, el tribunal decidió atender la demanda por la vía ordinaria, el 16 de diciembre de 2025, se celebró el juicio en su fondo. Las partes litigantes comparecieron asistidos por sus respectivos representantes legales. Sometido el asunto para disposición, el 11 de marzo de 2026, el foro primario emitió su sentencia y consignó, en lo pertinente, las siguientes determinaciones de hechos[4]:

1. La parte demandante es mayor de edad, contratista y vecino de Isabela, Puerto Rico.

2. La parte demandada es mayor de edad, casado, empleado y vecino de Isabela, Puerto Rico.

3. El demandado poseía una casa de madera en el Barrio Llanadas de Isabela, donde residía.

4. Las partes, quienes eran amigos, acordaron que el demandante construiría una casa en cemento donde estaba la casa de madera.

5. Como parte del acuerdo, el demandado asumiría el costo de todos los materiales y el demandante construiría la casa, pero únicamente hasta la etapa de empañete. El trabajo consistiría en seis etapas.

6. El demandante expresó que no pintaría la residencia, así como tampoco pondría losas, acuerdo que fue aceptado por el demandante-reconvencionista.

---

16 de noviembre de 2023, una factura con fecha del 2 de agosto de 2024 y unas capturas de pantalla.

[3] *Véase*, apéndice del recurso, entrada 6 de SUMAC TPI.

[4] *Íd.*, entrada 52 de SUMAC TPI.

7. Los pagos serían realizados al finalizar cada etapa.

8. En la primera etapa se trabajaría en la remoción de la estructura de madera y la base de la estructura de cemento, y el demandante reembolsaría $10,000.00 para empleados en esta etapa, pago que fue efectuado por el demandante.

9. La segunda etapa consistía en levantar las paredes de cemento y tirar el techo de la casa, lo que tendría un costo de $13,000.00. Esta etapa se pagó.

10. El 29 de julio de 2024 la parte demandante acudió a la residencia objeto de la construcción para finalizar la tercera etapa, la cual consistía en empañetar la estructura, y por la cual habían acordado un precio de $8,000.00.

11. Al llegar el demandante al área de trabajo, encontró el portón de la propiedad cerrado con candado.

12. El demandante se trató de comunicar con el demandado mediante llamada telefónica, pero fue infructuoso.

13. Mediante conversación escrita por la aplicación de mensajes WhatsApp, el demandado le expresó al demandante que no deseaba que la construcción continuara y que no le autorizaría recoger la madera utilizada y las herramientas hasta el mes de septiembre.

14. De la cantidad acordada de $8,000.00 por la etapa del empañete, se había pagado la cantidad de $5,000.00, quedando un balance de $3,000.00.

15. Además, se realizarían unos aleros y un balcón a la casa, para lo cual acordaron que se pagarían $1,000.00 por el balcón, y $3,000.00 por los adornos de los aleros.

16. La única etapa que no se pagó en su totalidad, según acordado, fue la etapa del empañete, la cual era por $8,000.00, y quedó un balance de pago de $3,000.00.

17. Lo único que quedó por realizarse fue la marquesina y montar las ventanas, pero el demandado no lo permitió.

18. De la prueba documental presentada en sala, no se desprende que el demandado le haya expresado al demandante en algún momento sobre vicios de construcción en la construcción de la propiedad.

19. El exhibit II de la parte demandante ilustra la casa casi terminada, excepto por la marquesina y las ventanas, etapa que el demandado no le permitió al demandante terminar.

20. De la prueba testifical, el Tribunal confiere total credibilidad al demandante a los efectos de que este fue quien trabajó la construcción de la estructura, según pactado y hasta la etapa contratada y permitida por el demandado.

21. En cuanto a la reconvención presentada, no surge que la parte demandante haya cometido algún acto negligente en el desempeño de la función para la cual fue contratado.

22. Surge de la prueba desfilada, que la parte demandada no permitió al demandante continuar con los trabajos, según contratados.

23. Tampoco desfiló prueba de vicios de construcción en la propiedad, por parte del demandante.

En virtud de lo anterior, el Tribunal de Primera Instancia declaró con lugar la demanda presentada y ordenó al señor Figueroa a pagar al señor Quiñones $3,262.00, más $2,500.00, en honorarios de abogado, por concepto de temeridad. A su vez, declaró sin lugar la reconvención presentada, por insuficiencia total de prueba.

Inconforme con la referida determinación, el 24 de marzo de 2026, el señor Figueroa presentó una solicitud de reconsideración y determinaciones de hechos adicionales. El 27 de marzo de 2027, el Tribunal de Primera Instancia la declaró sin lugar.

Aun inconforme, el señor Figueroa presentó este recurso y formuló los siguientes señalamientos de error:

Erró el TPI al no permitir al aquí apelante interrogar al apelado de epígrafe sobre su falta de inscripción en el Registro de Contratista del DACO y al no desestimar la demanda.

Erró el TPI al no enmendar sus determinaciones de hechos y/o no hacer determinaciones de hechos adicionales y/o sobre su apreciación de la prueba.

Erró el TPI al declarar CON LUGAR la demanda y conceder una cuantía por concepto de la etapa del empañete, a pesar de que de las alegaciones de la demanda no surge ninguna reclamación por falta de pago por la etapa cuatro del contrato (empañete).

Erró el Hon. Tribunal al no declarar CON LUGAR la Reconvención.

Erró el Hon. Tribunal al determinar que el aquí apelante actuó con temeridad.

(Énfasis y subrayado omitidos).

Mediante la resolución emitida por este Tribunal el 27 de abril de 2026, apercibimos a la parte apelada que el término para presentar su oposición vencería el martes, 26 de mayo de 2026, y la consecuencia de

no hacerlo[5]. El referido término transcurrió sin que esta compareciera, por lo que atendemos este recurso sin el beneficio de su comparecencia.

II

A

En nuestro sistema de derecho civil, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1063 del Código Civil, 31 LPRA sec. 8984. En cuanto a los contratos, "[l]a teoría contractual que rige en nuestra jurisdicción dispone el principio de contratación o autonomía de la voluntad". *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011).

El principio de *pacta sunt servanda* estatuido en el Código Civil dispone que "[l]as partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público". Art. 1232, 31 LPRA sec. 9753. Así pues, "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley", de manera que las obligaciones que nacen de estos deben cumplirse a tenor con los mismos. Art. 1233, 31 LPRA sec. 9754. Véase, *Coop. Sabaneña v. Casiano Rivera*, 184 DPR, a las págs. 173-174.

Asimismo, el Art. 1237 del Código Civil, 31 LPRA sec. 9771, establece que los contratos se perfeccionan desde el mero consentimiento entre las partes. De esta manera, los contratos obligan tanto al cumplimiento de lo expresamente pactado, como a las consecuencias que sean conformes a la buena fe, al uso y la ley, según la naturaleza de lo pactado. Art. 1062 y 1236, 31 LPRA sec. 8983 y 8757. A su vez, el Tribunal Supremo ha expuesto que la buena fe vincula a las partes durante las relaciones precontractuales, regulan la ejecución de los contratos y afectan su interpretación. *S.L.G. Ortiz Alvarado v. Great American,* 182 DPR 48, 68-69 (2011).

---

[5] *Véase*, expediente del recurso TA202600414, entrada 3 SUMAC TA.

## B

La Regla 42.2 de Procedimiento Civil dispone que: [...] Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. [...]. 32 LPRA Ap. V.

Cónsono con ello, es norma reiterada que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba de los tribunales de primera instancia. *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006). Al definir lo que constituye pasión, prejuicio o parcialidad, el Tribunal Supremo ha expresado que:

> Incurre en "pasión, prejuicio o parcialidad" aquel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.

*Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

La deferencia hacia el foro primario responde a que es el juez sentenciador el que tiene la oportunidad de recibir y apreciar toda la prueba testifical presentada, de escuchar la declaración de los testigos y evaluar su comportamiento. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009).

No obstante, es pertinente señalar que la doctrina de deferencia judicial no es de carácter absoluto; se puede intervenir "cuando la apreciación de la prueba no representare el balance más racional, justiciero y jurídico de la totalidad de la prueba". *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, nuestra intervención procede cuando, luego de hacer un análisis integral de la prueba testifical, su evaluación nos haya causado una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido de justicia. *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012).

Además, se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos estamos en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández v. González Hernández*, 181 DPR, a la pág. 777.

III

Mediante su primer señalamiento de error, el señor Figueroa aduce que el Tribunal de Primera Instancia erró al no permitirle interrogar al señor Quiñones sobre no estar inscrito en el registro de contratistas del Departamento de Asuntos del Consumidor (DACo).

En síntesis, arguye que la línea de preguntas objetada por la representación legal de la parte apelada y sostenida por el foro primario iba dirigida a impugnar la validez del contrato, el cual fue parte del testimonio directo del apelado. Sostiene que las preguntas sobre la falta de inscripción en el registro eran relevantes y pertinentes a la controversia. En particular, debido a su postura respecto a que la falta de inscripción viciaba de nulidad el contrato de obra por incluir una causa ilícita.

Examinada la transcripción de la prueba oral (TPO), concluimos que el foro primario no incidió al sostener la objeción a la línea de preguntas. Al amparo de la *Ley de Registro de Contratistas*, Ley Núm. 146-1995, según enmendada, 23 LPRA sec, 1020a-1020e, el incumplimiento del apelado con el requisito de inscripción en el *Registro de Contratistas* conlleva la imposición de multas. La ley provee expresamente para ello. No obstante, no encontramos referencia en la ley o en la jurisprudencia que sostenga la determinación de nulidad del contrato debido al incumplimiento de un contratista con tal requisito. En ese sentido, las preguntas del abogado relacionadas a la falta de inscripción, sobre la cual no hay controversia, resultaba, como bien concluyó el foro primario, impertinente.

En cuanto al segundo señalamiento de error, el señor Figueroa insiste en que el Tribunal de Primera Instancia debió enmendar o hacer determinaciones de hechos adicionales. Señala que las determinaciones

de hechos que surgen de la sentencia incluyen cuantías que no cuadran con las reclamadas por la parte apelada en su demanda. Además, que las determinaciones de hecho del foro primario no estaban sustentadas en la prueba presentada y admitida. Insiste en que el foro primario debió incluir como una de sus determinaciones de hechos que, conforme al contrato suscrito, el proyecto se había dividido en seis (6) etapas, para un costo total de $39,000.00, y que el señor Quiñones no estaba inscrito en el registro de contratistas del DACo. Además, aduce que, conforme a la TPO, el propio tribunal expresó, en más de una ocasión, que había tomado conocimiento de que la parte apelada no había terminado el empañete de la casa.

En cuanto a la cantidad reclamada, resalta que a pesar de que el foro *a quo* determinó que la parte apelante adeudaba $3,600.00, dictó sentencia por $3,262.00.

Ahora bien, en este caso, el señor Figueroa pretende que alteremos las determinaciones de hechos del Tribunal de Primera Instancia por presuntamente carecer de apoyo en la prueba presentada. No le asiste la razón. Si bien durante el juicio en su fondo se presentó el contrato y los estados de cuenta del señor Figueroa, no se presentó recibo alguno ni evidencia de que el dinero retirado de la cuenta se utilizara para cubrir el pago adeudado al señor Quiñones. Por tanto, examinado el expediente y la prueba presentada resaltamos, igual que el foro primario, que, ante la falta de prueba documental, la controversia se reducía a dirimir la credibilidad del testimonio prestado por los testigos.

En cuanto a la discrepancia entre las cantidades, en su demanda el señor Quiñones reclamó el pago de **$4,169.75**. La partida por el incumplimiento con el contrato de obra de construcción ascendía a **$3,262.00**, y por el accidente del empleado, **$907.75**. No obstante, el 17 de noviembre de 2025, el foro primario emitió una sentencia parcial mediante la cual archivó la causa de acción relacionada con los gastos médicos del empleado[6]. Es en virtud de lo anterior, que la cantidad en controversia y

---

[6] *Véase*, apéndice del recurso, entrada 32 SUMAC TPI.

por la cual el Tribunal de Primera Instancia finalmente dictó sentencia fue **$3,262.00.**

Con su tercer señalamiento de error, la parte apelante nuevamente propone que el foro primario erró al declarar con lugar la demanda y conceder una cuantía por la etapa del empañete. Lo anterior, a pesar de que de las alegaciones de la demanda no surge ninguna reclamación por falta de pago por la etapa cuatro del contrato.

Aclaramos que el señor Quiñones presentó una demanda por cobro de dinero por trabajo realizado, sin especificidad de la etapa de la obra, sino del trabajo relacionado a detalles tales como un balcón, trabajo de plomería y mochetas. En el juicio en su fondo, el foro primario tomó conocimiento de que el empañete de la obra no se completó[7]. No obstante, otorgó credibilidad al testimonio del señor Quiñones respecto a que había realizado, sin haber cobrado por ello, los trabajos por los cuales reclamaba el pago de $3,262.00[8].

En lo que a ello respecta, sostenemos que, ante la ausencia de pasión, prejuicio, parcialidad o error manifiesto, no intervendremos con la apreciación del Tribunal de Primera Instancia.

Mediante sus últimos dos señalamientos, la parte apelante sostiene que el foro primario no debió declarar sin lugar la reconvención instada, ni declararle incurso en temeridad. Nuevamente, ampara su reclamo en la nulidad del contrato de construcción por la falta de inscripción del señor Quiñones en el registro de contratistas del DACo.

En este caso, de la prueba desfilada durante el juicio y aquilatada por el tribunal no surge evidencia alguna de que el demandado apelante hubiera solicitado al demandante evidencia de las licencias correspondientes para ejercer la construcción. Tampoco presentó prueba alguna sobre vicios ocultos, tal como reclama en su reconvención. Además, conforme las fotos presentadas y el testimonio del señor Figueroa, la casa

---

[7] *Véase*, TPO, a la pág. 81.

[8] *Íd.*, a las págs. 35, 51 y 82.

pudo completarse. A esos efectos y por promover un juicio injustificado es que el Tribunal de Primera Instancia impuso el pago de honorarios por temeridad.

El Tribunal Supremo ha expresado en numerosas ocasiones que la determinación de temeridad es de índole discrecional y que, por tanto, los foros revisores no intervendrán en ella, salvo que resulte excesiva, exigua o constituya un abuso de discreción[9]. Al examinar el expediente de autos, consideramos que el foro primario actuó dentro de los parámetros discrecionales concedidos por el ordenamiento procesal. Por tanto, no le asiste la razón a la parte apelante.

IV

Por las razones anteriormente expresadas, confirmamos la *Sentencia* dictada por el tribunal apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[9] *Corpak, Art Printing v. Ramallo Brothers,* 125 DPR 724, 740 (1990).